AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original



**LODGED**
CLERK, U.S. DISTRICT COURT
7/19/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___JD___ DEPUTY

**FILED**
CLERK, U.S. DISTRICT COURT
07/19/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___dj___ DEPUTY

# UNITED STATES DISTRICT COURT

for the

Central District of California

|  |  |
|---|---|
| United States of America<br><br>v.<br><br>CHASE ANDRES SECRETAN,<br><br>Defendant(s) | Case No.  2:21-mj-03377 -Duty |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of December 1, 2020, in the county of Santa Barbara in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of Ammunition |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*/s/ Christopher Stantzos*
*Complainant's signature*

_____
Christopher Stantzos, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:  July 19, 2021

_____
*Judge's signature*

City and state:  Santa Barbara, California

_____
Hon. Louise A. LaMothe, U.S. Magistrate Judge
*Printed name and title*

AUSA: Maria Elena Stiteler (x6148)

## AFFIDAVIT

I, Christopher Stantzos, being duly sworn, declare and state as follows:

### I.  PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of a criminal complaint and arrest warrant against Chase Andres Secretan ("SECRETAN") for a violation of 18 U.S.C. § 922(g)(1) (Felon in Possession of Ammunition) (the "Subject Offense").

2.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant, and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND OF SPECIAL AGENT CHRISTOPHER STANTZOS

3.   I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been for one year.  I was hired by ATF in March 2020 and attended the ATF Academy from March through December 2020, where I received approximately 1,000 hours of formal training in various aspects of conducting firearms, explosives, arson, firearms trafficking, and gang investigations.  Before joining the ATF, I was an Intelligence Analyst ("IA") for the Federal Bureau of

Investigation ("FBI") for approximately four and a half years. As an IA, I produced intelligence products in furtherance of civil rights investigations and complex international money laundering investigations.  Before joining the FBI, I was a forensic scientist for the Washington, DC Department of Forensic Sciences for nearly two years, where I identified, documented, preserved, and collected physical evidence from crime scenes.

4.   I have participated in many aspects of gang, firearms, and drug investigations, including undercover operations, arrests, and surveillance.  I have also debriefed multiple informants and witnesses who had personal knowledge regarding illegal firearms and drug trafficking.  I am familiar with firearms and drug traffickers' methods of operation, including the distribution, storage, and transportation of drugs, as well as the collection of money proceeds of drug-trafficking and money-laundering methods used to conceal the nature of the proceeds.  I am familiar with the methods employed by gang members to thwart detection by law enforcement including the use of cellular telephone technology, counter-surveillance techniques, false or fictitious identities and addresses, money-laundering techniques, and coded language.

5.   Currently, I am assigned to the Los Angeles Field Division, Santa Maria Satellite Office ("SMSO") of the ATF.  I have been assigned to the SMSO since March 2020, in which time I have participated in controlled purchase operations, undercover operations, and gang investigations in Los Angeles, Santa Barbara, and San Luis Obispo Counties.

### III.   SUMMARY OF PROBABLE CAUSE

6.   In November and December, 2020, an undercover ATF confidential informant (the "CI") made plans to purchase firearms, ammunition, and narcotics with a person using Snapchat profile "yungc805," who is believed to be Chase Andres Secretan ("SECRETAN"), a previously convicted felon and a known associate of the West Side Santa Barbara criminal street gang.[1]  On December 1, 2020, in Goleta, CA, in Santa Barbara County, the CI purchased an un-serialized firearm (commonly referred to as a "ghost gun"), ammunition, and suspected M30 counterfeit pills from SECRETAN.  On December 8, 2020, the CI purchased a second ghost gun from SECRETAN.

### IV. STATEMENT OF PROBABLE CAUSE

7.   Based on my own observations, my review of law enforcement reports and field notes, and my discussions with other law enforcement officers, I know the following:

> **A.   December 1, 2020 Purchase of One Ghost Gun, Ammunition, a Laser Sight, and Suspected M30 Counterfeit Pills from SECRETAN**

8.   Since in or around November 2020, ATF agents, Santa Barbara County Sheriff's Office ("SBSO") deputies and detectives have been investigating SECRETAN in Goleta, California. Specifically, on November 22, 2020, I understand that SBSO Detective Robert DeBarge, acting in an undercover ("UC")

---

[1] SECRETAN is also the subject of a request for criminal complaint and arrest warrant for a violation of 18 U.S.C. § 922(g)(1) (Felon in Possession of Ammunition), which is being simultaneously filed with this request.

capacity, located public Snapchat profile "yungc805" on the
Snapchat social media application.[2]  While reviewing the public
"yungc805" account, Detective DeBarge observed that the user of
the profile was advertising firearms and narcotics for sale.
Detective DeBarge sent photographs obtained from the Snapchat
account to Santa Barbara Police Department ("SBPD") gang
officers, who identified the person in the profile photographs
as SECRETAN.  Detective DeBarge also reviewed SECRETAN's SBSO
booking photographs and confirmed SECRETAN was the person in the
"yungc805" account's profile photographs.

9.    On the same date, November 22, 2020, Detective
DeBarge, acting in a UC capacity, communicated via Snapchat
messages with SECRETAN at the "yungc805" account.  Agents
documented some of the messages with SECRETAN throughout this
investigation from the Snapchat application; however, because of
the encrypted nature of Snapchat, the application automatically
deleted some of the messages after Detective DeBarge viewed the
messages and before they could be preserved.  During the
Snapchat conversation, Detective DeBarge told SECRETAN that he
had a friend that wanted to purchase a firearm.  SECRETAN agreed
to speak with this person, who was actually an ATF CI.[3]

---

[2] I am aware from my training and experience in computer and
digital investigations that Snapchat is an encrypted multimedia
messaging application in which users can share text, audio,
video, and picture messages that typically disappear shortly
after viewing.

[3] The CI has provided reliable, credible, and actionable
intelligence that ATF corroborated through independent ATF
investigations.  In 2015 the CI was charged with federal
*(footnote cont'd on next page)*

10.  On or about November 22, 2020, Detective DeBarge
observed a public video message on the "yungc805" Snapchat
account in which SECRETAN described a firearm SECRETAN had
available for purchase.  During this conversation, SECRETAN
described the firearm as a "nine, got an extended clip, comes
with a laser, ummm and hella bullets [unintelligible] fourteen
hundred."  Based on my training and experience, I know this to
mean the firearm SECRETAN offered to sell included a 9mm caliber
pistol with an extended magazine, a laser sighting device, and
ammunition, all for $1,400.00.

11.  On November 24, 2020, the CI, at ATF SA Bryan
Traverso's direction, had a Snapchat conversation with SECRETAN,
who was using the "yungc805" Snapchat account.  Agents
documented some of the messages with SECRETAN from the Snapchat
application; however, because of the encrypted nature of
Snapchat, the application automatically deleted some of the
messages before documentation.  During an undocumented portion
of the conversation, the CI introduced himself/herself to
SECRETAN as the UC detective's friend and that s/he was
interested in purchasing the pistol SECRETAN had advertised for
sale.  SECRETAN told the CI the pistol would cost $1,400.00.
The CI then inquired about purchasing the pistol for $1,000.00
instead.  The CI and SECRETAN then engaged in a series of
documented Snapchat posts in which SECRETAN told the CI, in

---

racketeering conspiracy, drug, and firearms violations, to which
he has since pleaded guilty.  The CI is cooperating with the ATF
for consideration in the federal case and financial
compensation.

reference to the price of the pistol, "That's how much Glocks are going for right now."  SECRETAN next told the CI he could try to find the CI a Glock for $1,000.00 and continued telling the CI "but like I need my money, you know?"  SECRETAN then told the CI he could "probably get you a revolver or something for six."

12.  Next, the CI asked SECRETAN to send him/her a picture of the pistol and asked SECRETAN to lower his price for the pistol.  SECRETAN then sent the CI a picture of a Glock-type pistol and a large capacity magazine.  After this, the CI, in an undocumented Snapchat post, offered SECRETAN $1,000.00 for the pistol.  SECRETAN then, via documented Snapchat voice message, stated when discussing this price "like for everything that's in Santa Barbara right now, I'm dead ass, like I've sold like four of them already for like fourteen and no one's complained." Following this, the CI contacted SA Traverso and advised him of the Snapchat conversation with SECRETAN.

13.  On November 29, 2020, the CI, at SA Traverso's direction, initiated a Snapchat conversation with SECRETAN via the "yungc805" Snapchat account.  This conversation was undocumented as the conversation was deleted before law enforcement could document the content.  During the conversation, the CI offered to purchase the Glock-type pistol SECRETAN showed to the CI on November 24, 2020, for $1,200.00. SECRETAN then agreed to this price.  Following this, the CI contacted SA Traverso and advised him of the conversation with SECRETAN.

14.   On November 30, 2020, the CI, at SA Traverso's direction, initiated a documented Snapchat conversation with SECRETAN via the "yungc805" Snapchat account.   In the conversation, the CI told SECRETAN s/he would meet with SECRETAN the following day to carry out their prearranged firearms deal, to which SECRETAN agreed.   The CI then contacted SA Traverso and advised him of the conversation with SECRETAN.

15.   On December 1, 2020, the CI, at SA Traverso's direction, initiated a documented Snapchat conversation with SECRETAN, who was using the "yungc805" Snapchat account.   During the conversation, the CI tried to contact SECRETAN to verify their firearm deal for later that day but was unsuccessful. Later, SECRETAN contacted the CI and apologized for not contacting the CI sooner.   SECRETAN then asked the CI where the CI was.   The CI told SECRETAN s/he was in the Santa Barbara area and asked SECRETAN where they should meet.   SECRETAN told the CI to come to his residence and provided his address on Mandarin Drive, in Goleta, CA.   The CI then contacted SA Traverso and advised him of the conversation with SECRETAN.

16.   After speaking with SA Traverso and reviewing the audio and video recordings of the December 1, 2020 deal, I learned the following:

a.   On December 1, 2020, the CI met SA Traverso, ATF SA Jannah Holden, and Detective DeBarge at a predetermined meeting location in Goleta, CA.   At the location, SA Traverso, SA Holden and Detective DeBarge searched the CI and CI's vehicle for contraband, with negative results.   Next, SA Traverso

equipped the CI with an electronic monitoring and recording device.  SA Holden then provided the CI with government-provided funds to purchase the pistol from SECRETAN.

        b.   After providing the CI with government-provided funds to purchase the firearm from SECRETAN, SA Traverso and Detective DeBarge directed the CI to contact SECRETAN and advise s/he was coming to his residence.  The CI then sent SECRETAN a voice message on Snapchat to SECRETAN, at the "yungc805" Snapchat account.  In the voice message, which was documented and which I have reviewed, the CI told SECRETAN s/he was coming to SECRETAN's residence.

        c.   Following this, the CI exited the predetermined meeting location and proceeded to SECRETAN's residence.  At the same time, SA Traverso and Detective DeBarge followed the CI from the predetermined meeting location to SECRETAN's residence.  Once the CI arrived at SECRETAN's residence, SBSO surveillance personnel continued to maintain visual surveillance of the CI.

        d.   Once at SECRETAN's residence, the CI sent a voice message on Snapchat to SECRETAN, at the "yungc805" Snapchat account.  In the voice message, the CI told SECRETAN s/he was outside SECRETAN's residence and to come meet the CI outside the residence and carry out their prearranged firearms deal.  Additionally, the CI asked SECRETAN to bring him/her five "blues", which I know from my training and experience, to be M30 counterfeit pills, suspected to contain fentanyl instead of oxycodone.

e.   A few moments after this, the CI sent another voice message to SECRETAN via the "yungc805" Snapchat account. In the voice message, the CI told SECRETAN where s/he had parked their vehicle and what type of vehicle s/he was driving.

f.   Approximately one minute after this, SECRETAN arrived at the CI's vehicle carrying a small black bag. SECRETAN then entered the front passenger seat of the vehicle. Right after entering the CI's vehicle, SECRETAN told the CI, "I brought you some bullets too." Next, SECRETAN asked the CI, "you wanted the laser?" The CI stated s/he did want the laser sight for the firearm. SECRETAN agreed to get his for the CI and exited the CI's vehicle with the small black bag. SBSO Detective Justin DePinto observed SECRETAN returning to his residence.

g.   Approximately two minutes after this, Detective Justin DePinto observed SECRETAN exiting the area of his residence and returning to the front passenger seat of the CI's vehicle.

h.   Inside the CI's vehicle, the CI asked SECRETAN if he still wanted $1,200.00 for the firearm. SECRETAN said he did. The CI then counted out $1,200.00 in government-provided funds for SECRETAN. Next, SECRETAN opened the small black bag and removed a Glock-type pistol. After this, SECRETAN began to load the large capacity magazine for the pistol with 9mm ammunition. SECRETAN then inserted the loaded magazine into the pistol and manipulated the slide on the pistol, showing the CI

how the pistol functioned.  SECRETAN next handed the CI the laser sight and explained to the CI how it functioned.

   i. Next, the CI told SECRETAN that if he ever had other firearms to sell, to contact the CI directly and s/he would purchase them from SECRETAN.  The CI again counted out $1,200.00 in government-provided funds in front of SECRETAN.

   j. While counting out the money, the CI asked SECRETAN if he had the "blues," referring to the M30 counterfeit pills.  SECRETAN stated he did.  The CI then asked SECRETAN how much they were and SECRETAN said they were $15.00 per pill.  The CI then asked for five pills and SECRETAN stated he had seven for the CI.  SECRETAN then reached into his front left pocket and counted out eight M30 counterfeit pills for the CI.  SECRETAN handed the pills to the CI and the CI counted out $1,300.00 in government-provided funds, handing the money to SECRETAN.  SECRETAN then counted the funds and confirmed the amount.

   k. The CI again told SECRETAN to contact him/her if SECRETAN acquired additional firearms he wanted to sell.  SECRETAN then replied, "just hit me up whenever you need them." SECRETAN continued, "I'll just have my homie build it right there."  After this, SECRETAN asked the CI to let him know two weeks before the CI was ready to purchase the firearms so he had time to have everything ready.

   l. Shortly after this, SECRETAN exited the CI's vehicle.  Detective DePinto observed SECRETAN return to the area of his residence.

m.   The CI then drove away, and Detective DeBarge and SA Traverso followed the CI back to the predetermined meeting location.

n.   At the meeting location, SA Traverso and SA Holden took the following items from the CI and placed them into ATF custody: one Glock-type 9mm pistol with no serial number, 25 rounds of assorted 9mm ammunition,[4] one large capacity magazine, one laser sight, and eight suspected M30 counterfeit pills weighing approximately 1 gram.  On December 31, 2020, I shipped the pills to the Drug Enforcement Agency ("DEA") Forensic Laboratory for further analysis.  Based upon my research comparing the pills to DEA literature, I suspect these are counterfeit pain pills possibly containing fentanyl.

17.   A short time after the deal, SECRETAN, using the "yungc805" Snapchat account, contacted the UC Detective DeBarge's Snapchat profile.  In the documented Snapchat video message, SECRETAN thumbed through hundred-dollar bills with a partial message stating, "Homie came throo" while singing and driving.  After sending the video message, SECRETAN sent a voice message to the UC detective.  In the documented voice message, SECRETAN told the UC to come meet with him and the CI and that he and the CI had carried out the firearms deal.

---

[4] In an affidavit seeking a warrant to search SECRETAN's phone, filed on February 2, 2021, in case number 2:21-mj-850, I wrote that SA Traverso and SA Holden took 23 rounds of assorted 9mm ammunition into custody from the CI.  Further review of the evidence showed that SA Traverso and SA Holden took 25 rounds of 9mm ammunition into custody from the CI, not 23 rounds.

18.   In addition, shortly after the deal, SECRETAN posted a video on the "yungc805" Snapchat account.  In the documented video, SECRETAN is singing while driving and having multiple one hundred-dollar bills folded over and tucked into the right side of his hat.

**B.   December 8, 2020 Purchase of One Ghost Gun from SECRETAN**

19.   On December 2, 2020, SECRETAN checked himself into the Goleta Valley Cottage Hospital in Goleta, CA, with a gunshot wound, according to SBSO deputies who responded to the hospital and spoke with SECRETAN.  SBSO Detective DeBarge learned SECRETAN claimed to SBSO deputies that unknown individuals in the Goleta area shot him.

20.   On December 5, 2020, the CI received a documented Snapchat video message from SECRETAN via the "yungc805" Snapchat account.  In the video message, SECRETAN told the CI he had been shot and described his physical condition.  After this, SECRETAN told the CI he was to be released from the hospital that day. Following this, the CI contacted ATF SA Traverso and advised him of the video message from SECRETAN.

21.   On December 7, 2020, SECRETAN initiated a Snapchat message conversation with the CI via the "yungc805" Snapchat account.  Due to the encrypted nature of Snapchat communications, agents were unable to document all portions of this conversation.  In the conversation, SECRETAN sent the CI a documented video message which showed an individual holding a 9mm ammunition casing.  After this, the person is seen holding a

Glock-type 9mm pistol.  The video also had a message that read, "Hit me 1400."  Based on my training and experience, I believe this to mean SECRETAN was asking for $1,400.00 for the pistol he was advertising.  Following this, the CI contacted ATF SA Traverso and advised him of the conversation.

22.  On the same day, the CI, at the direction of SA Traverso, and SECRETAN engaged in an undocumented Snapchat conversation via the "yungc805" Snapchat account.  According to the CI, in the conversation, the CI asked SECRETAN how much the pistol would cost.  SECRETAN told the CI the pistol would cost $1,200.00.  The CI and SECRETAN then agreed to carry out the purchase of the pistol the following day.  Additionally, the CI inquired as to whether SECRETAN would be able to sell the CI three ounces of methamphetamine the following day.  SECRETAN told the CI he would look into it.  The CI then contacted ATF SA Traverso and advised him of the conversation.

23.  Later, on the same day, the CI, at SA Travero's direction, initiated a documented Snapchat conversation with SECRETAN via the "yungc805" Snapchat account.  In the conversation, the CI asked SECRETAN if their prearranged firearm deal was still going to take place the following day.  SECRETAN told the CI he was unsure but would let the CI know when "I have it in my hand," referring to the pistol.  SECRETAN then later contacted the CI and asked the CI when s/he was going to be in the Santa Barbara, CA area because he needed to get the pistol "out of storage" before selling it to the CI.  The CI then asked SECRETAN if he was able to acquire the methamphetamine, but

SECRETAN said he could not get the CI the methamphetamine.
SECRETAN stated "I for sure could get you that strap," using
coded language to reference the pistol.  Following this, the CI
contacted SA Traverso and advised him of the conversation with
SECRETAN.

24.  On December 8, 2020, SECRETAN initiated a Snapchat
message conversation with the CI via the "yungc805" Snapchat
account.  Agents and detectives were unable to document all
portions of the conversation, as the application deleted some of
the messages before documentation.  Despite this, the CI
documented portions of his/her Snapchat conversation with
digital photographs and transferred the images to SA Traverso
later that day.  In the conversation, SECRETAN asked the CI when
the CI was going to be in the Santa Barbara area.  The CI told
SECRETAN s/he was already on his/her way to the area.  SECRETAN
then told the CI to let him know when s/he was in the area.
SECRETAN then directed the CI to come to his residence. The CI
then asked SECRETAN to provide the CI with his cell phone number
so the CI could contact SECRETAN this way.  SECRETAN provided
his cell phone number to the CI.  Following this, the CI
contacted the UC and advised him of the conversation with
SECRETAN.

25.  After speaking with ATF SAs Traverso and Chan, I
learned the following:

a.  On December 8, 2020, the CI met ATF SA Ricky Chan
and Detective DeBarge at a predetermined meeting location.  At
the location, SA Chan and Detective DeBarge searched the CI and

the CI's vehicle for contraband, with negative results.  Next,
SA Chan equipped the CI with an electronic monitoring and
recording device.  SA Chan then provided the CI with government-
provided funds to purchase the pistol from SECRETAN.

        b.    After providing the CI with government-provided
funds to purchase the pistol from SECRETAN, SA Chan and
Detective DeBarge directed the CI to go to SECRETAN's residence.

        c.    Following this, the CI exited the predetermined
meeting location and proceeded to SECRETAN's residence.  At the
same time, SA Chan and DeBarge followed the CI from the
predetermined meeting location to SECRETAN's residence.  Once
the CI arrived at SECRETAN's residence, SBSO surveillance
personnel continued to maintain visual surveillance of the CI.

        d.    While the CI was going to SECRETAN's residence,
the CI contacted SECRETAN by means of a recorded voice call via
SECRETAN's Snapchat profile.  In the voice call, the CI told
SECRETAN s/he was on his/her way to SECRETAN's residence.  The
CI then asked SECRETAN which apartment was his.  SECRETAN
replied that he was in apartment "B," which SECRETAN described
as being in the rear portion of the apartment complex.  The CI
stated s/he would be there shortly.

        e.    Once at SECRETAN's residence, the CI initiated a
recorded voice call to SECRETAN via the "yungc805" Snapchat
account. In the voice call, the CI told SECRETAN s/he was
outside his residence.  SECRETAN then acknowledged this.

        f.    A few moments after this, an unidentified female
opened the front door of unit B and let then the CI into the

residence.  Once inside, the female led the CI to SECRETAN, who was in a bedroom lying in a bed.  When the CI spoke with SECRETAN, he showed the CI his wound from being shot on December 2, 2020.  The CI and SECRETAN then discussed the wound.

g.   While discussing the wound, the CI observed SECRETAN had a Glock-style pistol lying with him in the bed. Also, during the discussion about the wound, SECRETAN handed the CI the pistol.  The CI looked over the pistol and then handed SECRETAN $1,200.00 in government-provided funds.

h.   After this, the CI told SECRETAN to contact him/her if SECRETAN acquired additional firearms.  SECRETAN and the CI then spoke about SECRETAN possibly being able to acquire a P90 machine gun for the CI.  SECRETAN also told the CI he could acquire Glock switch machine gun parts as well.  The CI told SECRETAN s/he could purchase these items if SECRETAN was able to acquire them.  Shortly after this, the CI exited SECRETAN's residence.

i.   After the CI exited SECRETAN's residence, Detective DeBarge and SA Chan followed the CI back to a predetermined meeting location.

j.   At the meeting location, SA Chan took a Polymer80 Model PF940V2 9mm pistol, bearing no serial number, from the CI and placed it into ATF custody.  After this, SA Chan and Detective DeBarge recovered the electronic monitoring and recording devices from the CI.  SA Chan and Detective DeBarge then searched the CI and the CI's vehicle for additional contraband with negative results.

**C.   SECRETAN's January 8, 2021 Arrest**

26.   On January 11, 2021, I spoke with SBSO Detective
DeBarge.  After speaking with Detective DeBarge and reviewing
SBSO incident reports, I learned the following:

a.   During the morning hours of January 8, 2021,
Detective DeBarge, acting in a UC capacity, observed SECRETAN
posted a video on the "yungc805" Snapchat account.  In the
video, he observed SECRETAN driving in a vehicle around Goleta
with a firearm.  The message "Where this nigga at lk i lk emm"
was also posted on the video.  Based on my training and
experience and knowledge of crime reports in that area during
that time, I believe SECRETAN was stating he was looking for an
individual who shot two people in Goleta, CA, on January 7,
2021.  I believe SECRETAN intended to find that individual and
use the firearm SECRETAN displayed in the video to harm the
individual.  Detective DeBarge documented portions of this video
with digital photographs and transferred them to SA Stantzos,
who entered them into ATF custody.  Immediately after observing
SECRETAN's Snapchat video, Detective DeBarge contacted SBSO
deputies, who located SECRETAN.

b.   According to SBSO Deputy A. Hernandez's incident
report, on January 8, 2021, Deputy Hernandez attempted to
conduct a traffic stop on SECRETAN while he was driving a white
Toyota Corolla in Goleta, CA.  During the traffic stop, SECRETAN
fled from Deputy Hernandez in his vehicle and led multiple SBSO
deputies in a vehicle pursuit to Santa Barbara, CA.  Deputy
Hernandez noted that, during the pursuit, SBSO dispatch relayed

that someone reported seeing an online posting on Snapchat in which a male, "Chase" with unknown last name, driving an older silver sedan through Montecito, CA, stated he had a loaded shotgun in the vehicle.  The reporting party further provided "Chase's" Snapchat username as "YUNGC805."

c.    According to SBSO Detective DeBarge, on the same date, Detective DeBarge observed posted videos to the "yungc805" Snapchat account of SECRETAN driving around with a loaded, single-shot shotgun in a Toyota vehicle (based on the steering wheel decal).  After the pursuit terminated, while still monitoring the "yungc805" Snapchat account, Detective DeBarge observed SECRETAN was in the driver's seat of a Volkswagen vehicle.

d.    Based on this information and by reviewing SECRETAN's GPS ankle monitor locations provided by Santa Barbara County Probation, Detective DeBarge believed SECRETAN switched vehicles in the area of North Calle Cesar Chavez in Santa Barbara, CA, around 12:36 hours on January 8, 2021.  Detective DeBarge additionally observed a storage facility, A-American Self Storage, located at 1 North Calle Cesar Chavez #120 and viewed the surveillance footage from that timeframe.  In the surveillance footage, at approximately 12:37 hours, Detective DeBarge observed SECRETAN's mother enter the facility carrying a blue Nike backpack and leave without the backpack shortly thereafter.  Detective DeBarge then conducted a records check with A-American Self Storage and found that SECRETAN's mother had a storage locker under space "G-31."

e.    Upon learning this information, on January 8, 2021, Detective DeBarge obtained a search warrant from the Superior Court of Santa Barbara County, #20210108, signed by the Honorable Jean Dandona, authorizing SBSO detectives to search the G-31 storage locker.  SBSO detectives then located a blue Nike backpack inside the locker.  Inside of the backpack was a disassembled 20-gauge shotgun and a black GPS ankle monitor charger with a charging cable with the number "34" written on it and a scratched off barcode.

f.    Based on my training and experience and the totality of the information Detective DeBarge provided, I believe SECRETAN was driving around Goleta and Santa Barbara with a loaded 20-gauge shotgun, led SBSO deputies on a vehicle pursuit in a Toyota Corolla and coordinated with his mother to pick SECRETAN up and switch vehicles to avoid law enforcement detection.  SECRETAN's mother then took the shotgun and placed it inside the G-31 storage locker in her name in an attempt to hide it from law enforcement.

g.    For his actions on January 8, 2021, SECRETAN was arrested and charged in the Superior Court of California, Santa Barbara County, Case No. 1135943-0599474, with violating California Vehicle Code Sections 2800.2(a), evading law enforcement with disregard for public safety; 12500(a), driving without a valid California driver's license; and California Penal Code Section 30305(a)(1), prohibited person owning ammunition.  SECRETAN is currently incarcerated on these charges.

h.   On February 2, 2021, the Honorable Petro V. Castillo issued a search warrant in case number 2:21-mj-850 to search SECRETAN's cell phone (seized during his arrest) for violations of Title 18, United States Code, Sections 922(a)(1)(A) (Dealing Firearms without a License), 922(g)(1) (Felon in Possession of a Firearm), and 922(o) (Possession of a Machinegun), and Title 21, United States Code, Sections 846 and 841(a)(1) (Conspiracy to Distribute Controlled Substances and Distribution of Controlled Substances).

**D.   SECRETAN's Criminal History**

27.   On July 12, 2021, I reviewed criminal history records for SECRETAN and learned that SECRETAN had previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

a.   On or about January 23, 2020, a violation of California Penal Code section 29820(b): Possession of a Firearm by a Prohibited Person under the Age of 30, in the Superior Court of California, San Bernardino County, Case Number FSB19003448; and

b.   On or about September 17, 2020, a violation of California Health and Safety Code section 11351: Possession or Purchase for Sale of a Narcotic or Controlled Substance, in the Superior Court of California, Santa Barbara County, Case Number 20CR04233.

**E.   Interstate Nexus**

28.   On July 9, 2021, an ATF Interstate Nexus Expert examined the 25 rounds of ammunition purchased from SECRETAN on

December 1, 2020, and confirmed that the ammunition was
manufactured outside of the State of California.  Because the
ammunition was found in California, I believe that it has
traveled in and affected interstate commerce in order to have
been recovered in California.

### V.  CONCLUSION

29.  For all the reasons described above, there is probable
cause to believe that SECRETAN violated 18 U.S.C. § 922(g)(1)
(Felon in Possession of Ammunition).


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 19th day of
July, 2021.


HONORABLE LOUISE A. LAMOTHE
UNITED STATES MAGISTRATE JUDGE